UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WIRELESSWERX IP LLC,

     Plaintiff/Counter-Defendant,

     v.

OnStar, LLC,

     Defendant/Counter-Claimant.

Case No. 2:23-cv-11501-MAG-APP

Hon. Mark A. Goldsmith
Mag. Anthony P. Patti

## OPINION AND ORDER GRANTING ONSTAR'S MOTION TO DISMISS (ECF NO. 27) AND DENYING WIRELESSWERX'S REQUEST FOR LEAVE TO AMEND (ECF NO. 28)

In this patent infringement case, Plaintiff/Counter-Defendant WirelessWerx IP LLC ("WirelessWerx") alleges that Defendant/Counter-Claimant OnStar, LLC ("OnStar") infringes U.S. Patent No. 8,009,037, which is titled "Method and System to Control Movable Entities" (the "'037 Patent").

Presently before the Court are OnStar's motion to dismiss the First Amended Complaint [1] and WirelessWerx's request for leave to amend. The parties have submitted written briefs explaining their positions on whether dismissal is appropriate and whether leave to amend is warranted. ECF Nos. 27, 28, 29. Pursuant

---

[1] "Defendant OnStar, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)".  ECF No. 27.

to Local Rule 7.1(f)(2), the Court will decide OnStar's motion to dismiss without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this opinion and order, the Court will **GRANT** OnStar's motion to dismiss the First Amended Complaint **WITHOUT PREJUDICE** and **DENY** WirelessWerx's request for leave to amend **WITH LEAVE** to file a properly supported motion to amend. To the extent WirelessWerx intends to seek leave to amend, it must file a properly supported motion to amend within ten days of this opinion and order.

## I.    PROCEDURAL HISTORY

On June 23, 2023, WirelessWerx filed this patent infringement case against OnStar, alleging that OnStar infringes the '037 Patent. ECF No. 1. On June 26, 2023, WirelessWerx refiled the original complaint after the Court struck the initial filing for having improper size font. ECF No. 7. On August 21, 2023, OnStar answered the original complaint and counterclaimed for declaratory judgment, denying that OnStar infringes the '037 Patent and alleging that the '037 Patent is invalid. ECF No. 16. On September 5, 2023, WirelessWerx answered the counterclaim, denying that the '037 Patent is invalid. ECF No. 18. On December 8, 2023, WirelessWerx filed a first amended complaint ("FAC"). ECF No. 25. In the original complaint, WirelessWerx asserted a claim of direct infringement. ECF No. 7. In the FAC, WirelessWerx further asserts claims of induced infringement and contributory infringement, but does not amend its direct infringement allegations. ECF No. 25.

On December 22, 2023, instead of answering the FAC, OnStar filed its present motion to dismiss, asking the Court to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).[2] ECF No. 27. In opposition, to the extent the Court finds that OnStar is entitled to dismissal, WirelessWerx asks the Court for leave to amend the FAC under Federal Rule of Civil Procedure 15(a)(2). ECF No. 28.

## II.    PLEADING STANDARDS

In accordance with Federal Circuit jurisprudence, district courts adjudicating patent infringement cases apply the law of the Federal Circuit to questions pertaining to patent law and the law of the regional circuit to procedural questions. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). Whether to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is a "purely procedural question" governed by the law of the regional circuit. *Id.*

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to make such a showing may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[2] OnStar additionally requests a stay of discovery. Specifically, OnStar asks the Court to stay entry of a scheduling order pending resolution of its motion to dismiss. Since the Court has not entered a scheduling order for this case, OnStar's additional request for a stay of discovery is moot.

When deciding a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all of the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Beyond the complaint, a court may consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss" if the documents are "referred to" in the complaint and "central to" its claims. *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion, a complaint need only contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

4

### III.   BACKGROUND

#### A.   '037 Patent

The '037 Patent, titled "Method and System to Control Movable Entities," issued on August 30, 2011 and claims priority to a provisional patent application filed on November 5, 2004.

The '037 Patent is directed to tracking systems for vehicles, such as systems used to manage vehicle fleets. '037 Patent 1:28-50. In the written description, the '037 Patent describes that prior systems were limited to relaying position information from a vehicle to a computer that can display the vehicle's position on a map. *Id.* 1:48-50. The '037 Patent discloses a computer-based system whose hardware components and software features allow users to remotely monitor and control vehicles in relation to preconfigured events and preconfigured geographical zones. *Id.* 1:21-24; 1:54-56; 6:14-17. As its basic components, in addition to a wireless communications network, the system includes a transponder for each vehicle, a client console for users to remotely monitor and control the vehicle, and a backend control system for handling communications between the transponder and the client console. *Id.* 7:65-8:59; 18:8-22:29.

As one benefit of the system, the '037 Patent discusses the transponder's features for monitoring and controlling the vehicle. In the vehicle, the transponder gathers vehicle status information, such as position and speed, and controls vehicle

functions, such as turning the ignition on or off and locking or unlocking the doors. *Id.* 6:22-27; 7:4-20; 10:12-15; 10:54-58. Moreover, the transponder can be programmed to recognize, monitor, and respond to events, such as when the vehicle exceeds a speed threshold, and controls vehicle functions assigned to the events. *Id.* 6:49-56; 11:39-40; 11:55-57; 11:64-14:25. In conjunction with its operation in the vehicle, the transponder sends vehicle status information and event messages to the client console through the backend control system. *Id.* 6:57-62; 8:16-21; 8:37-41. The client console then displays the vehicle's position on a map, along with event messages and any other vehicle status information from the transponder. *Id.* 22:50-24:9.

As another benefit of the system, the '037 Patent discusses the client console's features for querying and configuring the transponder. Using the client console, users can send commands to the transponder through the backend control system, including requests for vehicle status information, commands for controlling vehicle functions, and commands for configuring the transponder. *Id.* 7:40-44; 7:49-55; 8:16-21; 8:37-41; 17:4-55; 21:26-22:13. Through the client console, the user can also configure the transponder and enable and disable events by selecting the desired logical parameters and assigning the desired vehicle functions. *Id.* 11:64-14:25; 21:67-22:4. For example, the system can include an excessive idle feature. In this example, the transponder can be configured to turn the ignition off when the vehicle

6

has not moved a preselected distance over a preselected time interval. *Id.* 7:44-48; 14:13-25.

In connection with these benefits, the claims of the '037 Patent are directed to a "geofencing" feature. The geofencing feature involves preconfigured geographical zones, such as zones tracing the routes of highways, or the borders of premises, cities, or states. *Id.* 7:56-61. Using the client console, users can configure geographical zones by opening a map and selecting any number of coordinates to serve as deflection points for creating line segments that define the geographical zones. *Id.* 14:50-53; 24:41-50. Users can then select the desired geographical zones to be downloaded to the transponder, enable zone entry and zone exit events, and assign the desired vehicle functions to various events. *Id.* 14:58-60; 15:12-27; 24:51-62. In the vehicle, the transponder uses the coordinates to define the geographical zones. *Id.* 14:61-15:5; 15:28-36. The transponder then monitors when the vehicle enters or exits the geographical zones, sends event messages that allow users to track the vehicle through the geographical zones, and controls vehicle functions assigned to the events. *Id.* 14:29-30; 16:53-65. For example, the transponder can be configured to lock the doors when the vehicle enters or exits a geographical zone. *Id.* 16:67-17:2.

The '037 Patent has sixty-five claims, including independent Claims 1, 16, 35, and 49. The claims, all of which are method claims, recite methods of wirelessly

managing an entity (e.g., a vehicle) in relation to a preconfigured geographical zone

through the use of a transponder on the entity, a computing device, and a control

center. *Id.* 26:57-30:44. Claim 1, which WirelessWerx treats as exemplary, recites

three method steps:

> **1**. A method to wirelessly manage an entity having a transponder, comprising:
>
> loading from a computing device to a transponder's memory a plurality of coordinates;
>
> programming a microprocessor in the transponder to define a geographical zone by creating an area on a pixilated image using said plurality of coordinates, wherein said area is representative of a geographical zone; and
>
> sending a command to the transponder to execute a configurable operation upon receiving a command from a control center, the command being associated with a status of the entity in relation to the geographical zone.

*Id.* 26:57-27:2.

As set forth in the claim language, exemplary Claim 1 recites interrelated

hardware and software limitations directed to the disclosed geofencing feature. In

connection with the recited transponder, computing device, and control center, the

claim language centers on the relationship between the recited plurality of

coordinates, a geographical zone, and a configurable operation. According to the

claim language, first, in the "loading" step, the plurality of coordinates is loaded

from the computing device to the transponder's memory. Second, in the

"programming" step, the transponder's microprocessor is programmed to use the

plurality of coordinates to define the geographical zone by creating an area representative of the geographical zone on a pixilated image. Third, in the "sending a command" step, a command is sent to the transponder to execute the configurable operation upon receiving a command from the control center associated with the status of the entity in relation to the geographical zone.

## B.    Infringement Allegations

The Supreme Court has instructed that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### 1.    FAC

The FAC includes two exhibits: (1) the '037 Patent; and (2) a claim chart setting forth WirelessWerx's direct infringement allegations for example Claim 1. The attached claim chart contains all of WirelessWerx's factual allegations supporting its infringement theories.

In the FAC itself, WirelessWerx does not go beyond identifying the '037 Patent as the patent-in-suit and naming OnStar as the accused infringer. Specifically, WirelessWerx formulaically alleges that OnStar directly and indirectly infringes one

or more claims of the '037 Patent by offering unidentified OnStar products and

services and providing unidentified instructions on how to use them:

15. The term "Accused Instrumentalities" or "Accused Products" refers to, by way of example and without limitation, OnStar's products, www.onstar.com.

**[Direct Infringement Allegations]**

17. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '037 Patent, by making, using, testing, selling, offering for sale and/or importing into the United States Defendant's Accused Products.

**[Induced Infringement Allegations]**

23. Defendant has and continues to induce infringement from at least the filing date of the lawsuit. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., OnStar services) and related services that provide question and answer services across the Internet such as to cause infringement of one or more of claims 1-65 of the '037 patent, literally or under the doctrine of equivalents. Defendant, from at least the filing date of the lawsuit, has continued to encourage and instruct others on how to use the products showing specific intent. Moreover, Defendant has known of the '037 patent and the technology underlying it from at least the filing date of the lawsuit. For clarity, direct infringement is previously alleged in this complaint.

**[Contributory Infringement Allegations]**

24. [First three sentences identical to ¶ 23 except for substitution of "induce infringement" with "contributorily infringe" in first sentence.]. Further, there are no

substantial noninfringing uses for Defendant's products and services. [Last two sentences identical to ¶ 23.].

ECF No. 25, PageID.143-145.

Elsewhere in the FAC, WirelessWerx does not allege any facts concerning the technology at issue in this case. As to the patent-in-suit, WirelessWerx does not describe the patented invention except to note that the '037 Patent is entitled "Method and System to Control Movable Entities." *Id.*, PageID.143. Although the FAC contains an "Accused Products" definition, WirelessWerx vaguely identifies the accused OnStar products as "OnStar's products," with a general citation to the OnStar website. *Id.* And "OnStar's products, www.onstar.com" are only "by way of example and without limitation." *Id.* Moreover, the "Accused Products" definition, and similar passing references to "infringing" OnStar "activities," "products," and "services," are not supported by any description of the nature of OnStar's business. *Id.*, PageID.140-143. WirelessWerx does not even use the word "vehicles," much less describe that OnStar offers or uses the type of system disclosed by the '037 Patent. *Id.*

Simply put, the FAC is a boilerplate complaint for patent infringement. As to the FAC itself, the Court finds that WirelessWerx does not set forth any infringement allegations entitled to the assumption of truth. Specifically, in the absence of factual allegations about specific accused OnStar products or services, WirelessWerx's infringement allegations, including the "Accused Products" definition, are "bare

assertions" that "amount to nothing more than a formulaic recitation of the elements" of direct, induced, and contributory infringement claims. *Iqbal*, 556 U.S. at 681 (quotation omitted) (citing *Twombly*, 550 U.S. at 555). "As such, the allegations are conclusory and not entitled to be assumed true." *Id. See also Arunachalam v. Apple, Inc.*, 806 Fed. App'x 977, 981 (Fed. Cir. 2020) (affirming dismissal of infringement claim under Rule 12(b)(6) for "fail[ure] to allege facts that supported the cause of action" because patentee's complaint accusing app distribution platforms "never identified even a single specific app, nor did it specifically allege how such an app (or platform) actually infringes").

### 2.    Claim Chart

Accordingly, WirelessWerx is left to rely on the attached claim chart for any factual infringement allegations that would suffice to survive OnStar's motion to dismiss. In the FAC, WirelessWerx states that the claim chart sets forth its direct infringement allegations:

> 22. The claim chart attached hereto as Exhibit B describes how the elements of an exemplary claim 1 from the '037 Patent are infringed by the Accused Products. This provides details regarding only one example of Defendant's infringement, and only as to a single patent claim. Plaintiff reserves its right to amend and fully provide its infringement arguments and evidence thereof until its Preliminary and Final Infringement Contentions are later produced according to the court's scheduling order in this case.

ECF No. 25, PageID.144.

In the claim chart, as best understood by the Court, WirelessWerx alleges that OnStar directly infringes exemplary Claim 1 of the '037 Patent in connection with a smartphone app for Chevrolet vehicles. The Court notes that the consistency between the FAC and the claim chart is unclear. In the FAC, WirelessWerx states that the claim chart describes infringement by the "Accused Products," defined as "OnStar's products, www.onstar.com." In the claim chart, however, WirelessWerx does not rely on evidence about OnStar products from the OnStar website. Instead, WirelessWerx relies on evidence about the myChevrolet app from the Chevrolet website. WirelessWerx does not offer any explanation of the relationship between OnStar and non-party Chevrolet in either the FAC or the claim chart.

The claim chart substantively consists of website screenshots and allegations that the websites show verbatim recitations of the claim language. ECF No. 25-2, PageID.190-193. WirelessWerx initially cites to the OnStar website, but only to allege, without supporting analysis, that "OnStar has" the method recited in the preamble, namely, "a method to wirelessly manage an entity having a transponder." *Id.*, PageID.190. According to the screenshot, the cited homepage does not mention any specific OnStar products. *Id.*

As to the claim language recited in the body, WirelessWerx cites to the Chevrolet website and its description of the myChevrolet app. *Id.*, PageID.191-193. The cited pages state that the app has a "Vehicle Locate" feature for customers to

13

"[l]ocate your vehicle's position on a map," as depicted by an Apple iPhone displaying a Chevrolet vehicle's position on a Google map. *Id.*, PageID.191-192. Moreover, the app has a "Monitor and Control Your Vehicle with Your Phone" feature, in which "The myChevrolet App lets you remotely command your vehicle right from your smartphone, allowing you to turn it on or off, check oil life and do things like get directions, set parking reminders and make service appointments." *Id.*, PageID.193.

As to the performance of the method steps, WirelessWerx points to the vehicle locate feature to allege that "[t]he reference describes" the "loading" and "programming" steps. *Id.*, PageID.191-192. To allege that "[t]he reference describes" the "sending a command" step, WirelessWerx points to the remote command feature of the myChevrolet app. *Id.*, PageID.193. The section of the claim chart on the "loading" step, reproduced below, is representative of WirelessWerx's allegations that "[t]he reference describes" verbatim recitations of the claim language.

| US8009037 B2<br>Claim 1 | OnStar |
|---|---|
| loading from a computing device to a transponder's memory a plurality of **coordinates**; | • Navigation:<br><br>  • Plot your vehicle's location on a map.<br><br>  • Send Turn-by-Turn or in-dash directions from your phone to your vehicle[3].<br><br>• Vehicle Locate[10]:<br><br>  • <u>Locate your vehicle's position on a map.</u><br><br>  • Enable specified contacts to view your vehicle's location.<br><br>  • Create arrival and departure alerts.<br><br>  • Use the myChevrolet App to set notification preferences.<br><br><https://my.chevrolet.com/learnAbout/mychevroletapp><br><br><span style="color:red">The reference describes loading from a computing device to a transponder's memory a plurality of coordinates.</span><br><br>  • <span style="color:red">**Coordinates = Locate your vehicle's position on a map**</span> |

*Id.*, PageID.191.

As shown above, as the only supporting analysis for how the method steps are allegedly performed, WirelessWerx bolds portions of the claim language reproduced in the first column and/or adds a bullet point allegation in the second column that excerpted portions of the claim language "=" excerpted statements from the cited pages. *Id.*, PageID.191-193. As an example, in the "loading" step, the claim language recites "loading from a computing device to a transponder's memory a plurality of coordinates." '037 Patent 26:59-60. In the claim chart, WirelessWerx, pointing to the vehicle locate feature, alleges that "Coordinates = Locate your vehicle's position on a map." ECF No. 25-2, PageID.191. While identifying alleged "coordinates," WirelessWerx does not address the additional claim language reciting

that the plurality of coordinates are "load[ed] from a computing device to a transponder's memory." *Id.*

The claim chart is otherwise silent on the details of WirelessWerx's infringement theory. Initially, WirelessWerx does not explain whether the app is (or is part of) the accused OnStar product, or instead, whether the accused OnStar product is somehow related to the app. Moreover, while pointing to the features of the app to allege performance of the method steps, WirelessWerx does not identify who among OnStar, Chevrolet, and customers allegedly performs the method steps. As to the hardware limitations, WirelessWerx does not identify an alleged transponder, computing device, or control center. Relatedly, WirelessWerx does not explain whether the app (or the smartphone) is an alleged component, and if so, which one. As to the software limitations, WirelessWerx does not fully explain how the method steps are allegedly performed. Specifically, as shown by the above example for the "loading" step, the supporting analysis WirelessWerx offers is directed to only some portions of the claim language.

## IV.  ANALYSIS

In its motion to dismiss, OnStar moves to dismiss the FAC in its entirety, including both the direct infringement claim and the indirect (i.e., induced and contributory) infringement claims. As to the direct infringement claim, OnStar moves to dismiss the FAC on two grounds. First, OnStar argues that dismissal is

appropriate because the FAC does not give OnStar fair notice of the infringement claim in this case. Second, OnStar argues that dismissal is appropriate because the FAC does not state a plausible claim of infringement. As to the indirect infringement claims, OnStar argues that dismissal is appropriate for two reasons. First, OnStar argues that WirelessWerx does not allege any facts to support the recitations of the legal standards for induced and contributory infringement. Second, OnStar argues that WirelessWerx has not sufficiently pleaded direct infringement.

For the reasons set forth below, the Court finds that OnStar is entitled to dismissal of the direct infringement claim and indirect (i.e., induced and contributory) infringement claims. Accordingly, the Court finds that OnStar is entitled to dismissal of the FAC.

### A.    Preliminary Matter

As a preliminary matter, the Court notes sua sponte that OnStar's motion to dismiss raises a procedural issue under Federal Rule of Civil Procedure 12. OnStar moves to dismiss the FAC under Rule 12(b)(6) for failure to state a claim of infringement, or, in the alternative, for judgment on the pleadings of non-infringement under Rule 12(c).

"A motion asserting any [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

But OnStar answered the largely identical original complaint instead of filing a motion to dismiss, and filed its motion to dismiss instead of answering the FAC. OnStar's motion to dismiss is therefore untimely under Rule 12(b) and premature under Rule 12(c). *Power Probe Grp., Inc. v. Innova Elecs. Corp.*, 670 F. Supp. 3d 1143, 1146 (D. Nev. 2023) ("Interpreting FRCP Rule 12(b) to permit a defendant to submit a post-answer motion to dismiss an amended complaint attacking claims raised in the original complaint would render the 12(b) restriction on post-answer motions meaningless."); Fed. R. Civ. P. 12(c) ("After the pleadings are closed … a party may move for judgment on the pleadings.").

The Court need not address the procedural issue in detail because it will decide OnStar's motion to dismiss in the exercise of its discretion. Initially, as OnStar filed its motion to dismiss instead of answering the FAC, and the pleadings are thus not closed, the Court will treat it as a Rule 12(b)(6) motion to dismiss. The Court will decide OnStar's motion to dismiss for two reasons. First, WirelessWerx did not raise the procedural issue or otherwise object to the Court deciding OnStar's motion to dismiss. Courts of appeals have held that any procedural error committed by a district court in deciding an untimely Rule 12(b)(6) motion to dismiss is harmless because the result is the same as if the defendant filed an answer and asserted the Rule 12(b)(6) defense in a Rule 12(c) motion for judgment on the pleadings. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-19 (9th Cir. 2017) (collecting

18

cases). *See also United Food & Commercial Workers v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (explaining that courts decide a Rule 12(c) motion for judgment on the pleadings using the same standard that applies to a Rule 12(b)(6) motion to dismiss). Second, as will become clear from the below discussion of the FAC, a decision on OnStar's motion to dismiss will promote efficient resolution of this case. District courts, including this one, have held that a district court has discretion to decide an untimely Rule 12(b)(6) motion to dismiss in the interest of efficiency. *Davis v. City of Dearborn*, No. 2:09-CV-14892, 2010 WL 3476242, at *4 (E.D. Mich. Sept. 2, 2010) (collecting cases).

### B.   Notice of Direct Infringement Claim

Turning to the merits of OnStar's motion to dismiss, OnStar's first ground for dismissal is directed to the notice requirement. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotations and alterations omitted) (citing *Twombly*, 550 U.S. at 555). In the context of patent infringement cases, the Federal Circuit has held that fair notice requires that the accused infringer "be placed on notice of what activity or device is being accused of infringement." *K-Tech Telecomms., Inc. v. Time Warner Cable,*

*Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013). "It is not enough to say 'you infringe my patent.'" *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 Fed. App'x 934, 937 (Fed. Cir. 2015). "There must be some allegation of specific services or products of the defendants which are being accused." *Id.*

In its motion to dismiss, OnStar argues that dismissal is appropriate because WirelessWerx has not identified a specific accused OnStar product or a specific person or entity who allegedly performs the method steps recited by exemplary Claim 1. As to the FAC itself, OnStar argues that, in defining the "Accused Products" as "OnStar's products," WirelessWerx "does not even attempt to specifically identify an accused product, system, or service offering." ECF No. 27, PageID.213. OnStar also notes that "WirelessWerx appears to accuse OnStar's entire business platform." *Id.*, PageID.212. "By failing to even identify a specific accused product or service," OnStar argues that "WirelessWerx is left to improperly pick and choose at will features of 'OnStar's products' generally to cobble together an infringement allegation." *Id.*, PageID.214. With respect to the claim chart attached to the FAC, OnStar argues that the software limitations recited by exemplary Claim 1 "are not limitations for which website screenshots or product photos alone are sufficient to … put OnStar on notice of the scope of WirelessWerx's infringement claims, particularly where, as here, WirelessWerx has not even identified a product from OnStar that it accuses of infringement." *Id.*, PageID.215.

20

In opposition, WirelessWerx argues that dismissal is not appropriate because "identification of the Accused Products that embody WirelessWerx's claimed invention, combined with the claim chart attached to the Amended Complaint, are more than sufficient to put OnStar on notice as to what they must defend." ECF No. 28, PageID.232.

At the outset, the Court notes that Federal Circuit decisions addressing the notice requirement make clear that failure to identify a specific accused product is sufficient grounds for dismissal. In *Addiction and Detoxification*, the Federal Circuit held that "the notice required in a complaint" must be met by a "factual allegation that a particular device infringes." *Addiction & Detoxification*, 620 Fed. App'x at 937 (construing now-abrogated Fed. R. Civ. P. Form 18). There, the patentee alleged that the accused infringers infringed by making, selling, and using "activities, methods, and procedures" covered by the patent. *Id.* In affirming the district court's dismissal of the infringement claim, the Federal Circuit held that the patentee's "bare allegation" did not satisfy the notice requirement because it "provides no detail whatsoever that would put [d]efendants on notice as to what activity, method, or procedure is alleged to infringe." *Id.*

The Court also notes that, even together with factual allegations about the patented invention and the parties, functional descriptions of allegedly infringing products are not a substitute for identifying a specific accused product. In *Artrip*, the

patentee obtained patents on technology for improving the production of the lift-tab can ends used to open beverage cans. *Artrip v. Ball Corp.*, 735 Fed. App'x 708, 709 (Fed. Cir. 2018). In the operative complaint, the patentee described the patents and the parties, and alleged that the accused infringer used infringing machines in its packaging plants. *Id.* at 714. Although the patentee identified a particular packaging plant and described the accused machines as systems for "forming and attaching lift-tabs to can ends," the Federal Circuit affirmed the district court's dismissal of the infringement claim. *Id.* The Federal Circuit held that the complaint "did not fairly identify the accused machines" because it "does not sufficiently identify, for example, by photograph or name, any of the particular machines that allegedly infringe other than by broad functional language." *Id.* at 715.

In accordance with these principles, the Court finds that the FAC does not give OnStar fair notice of the infringement claim in this case. Initially, in the FAC and its opposition to OnStar's motion to dismiss, WirelessWerx variously refers to the accused OnStar products as "its accused products or services, i.e., OnStar's products," "its products and services (e.g., OnStar services)," "by way of example and without limitation, OnStar's products, www.onstar.com," and "OnStar's products (which can be found at onstar.com)." ECF No. 25, PageID.143-144; ECF No. 28, PageID.232-234. Similar passing references to "OnStar's Accused Product" and "the Accused Product(s)" involve the same unidentified OnStar products and

general citation to the OnStar website. ECF No. 28, PageID.232-234. These "bare allegation[s]" merely "say 'you infringe my patent'" and "provide[] no detail whatsoever that would put [OnStar] on notice as to what [product or service] is alleged to infringe." *Addiction & Detoxification*, 620 Fed. App'x at 937.

Here, the evidence in the claim chart saves the FAC from a complete lack of factual allegations. However, the limited details of WirelessWerx's infringement theory merely give rise to speculation about what the accused OnStar product is and the infringement claim that OnStar must defend.

As noted above, the claim chart purportedly describes infringement by the "Accused Products," but WirelessWerx relies on evidence about the myChevrolet app, not OnStar products, from the Chevrolet website, not the OnStar website. While the claim chart is silent on this point, in its opposition to OnStar's motion to dismiss, WirelessWerx suggests that the app is not the accused OnStar product. Rather, WirelessWerx states that the claim chart shows "how the Accused Product operates with an app." ECF No. 28, PageID.234. However, even assuming that it is reasonably inferable from the claim chart that the accused OnStar product is somehow related to the app, the FAC "d[oes] not fairly identify the accused [OnStar product]" because it "does not sufficiently identify … the particular [OnStar product] that allegedly infringe[s] other than by broad functional language." *Artrip*, 735 Fed. App'x at 715. *See also Golden v. Qualcomm Inc.*, 2023 U.S. App. LEXIS

26806, at *6 (Fed. Cir. Oct. 10, 2023) (affirming dismissal of infringement claim under Rule 12(b)(6) because patentee's complaint "does not include allegations beyond the identity of the defendant, implied references to the alleged infringing devices, and the alleged infringed-upon patents").

The Court notes that WirelessWerx cites the Federal Circuit's *Disc Disease* decision to argue that the FAC is "sufficient for the same reasons" as the complaint in that case. ECF No. 28, PageID.232. In *Disc Disease*, the Federal Circuit held that the complaint gave the accused infringers fair notice of the infringement claim because the patentee specifically identified the accused products by naming them and attaching their photos to the complaint. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Contrary to WirelessWerx's argument, calling unidentified OnStar products "the Accused Products" and attaching evidence about the somehow related myChevrolet app is not the same as identifying a specific accused OnStar product. Notably, WirelessWerx implicitly refutes its own argument by never saying the name of the accused OnStar product or pointing out where its name and images appear in the FAC or the claim chart.

In any event, the claims of the '037 Patent do not recite a "product." Rather, as noted above, exemplary Claim 1 recites a method of wirelessly managing an entity (e.g., a vehicle) through the use of a transponder, a computing device, and a control center. In the claim chart, WirelessWerx alleges that OnStar directly infringes in

connection with a smartphone app for Chevrolet vehicles, but does not identify who allegedly uses what components to perform which method steps. Specifically, while pointing to the features of the app to allege performance of the method steps, WirelessWerx does not identify an alleged transponder, computing device, or control center. Moreover, WirelessWerx does not identify who among Chevrolet (by providing vehicles), customers (by using the app), and OnStar (in some other way) allegedly performs the method steps. In the absence of factual allegations about specific acts that constitute infringement, the FAC does not fairly identify the infringement claim that OnStar must defend. *Cf. Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (holding that that patentee's allegations satisfied the notice requirement because they identified "where the alleged infringement occurred," "when it occurred," "who performed the allegedly infringing act," "and why").

The Court does not question that OnStar and Chevrolet are related entities, or that WirelessWerx relied on evidence about OnStar products in its pre-suit investigation. In the FAC, however, WirelessWerx relies entirely on evidence about the myChevrolet app, without identifying a specific accused OnStar product related to the app, or who among the entities allegedly performs the method steps. Because WirelessWerx has not identified what acts of which entities constitute infringement, the Court finds that the FAC does not give OnStar fair notice of the infringement

claim in this case. Accordingly, the Court finds that OnStar is entitled to dismissal of the direct infringement claim.

### C.    Plausibility of Direct Infringement Claim

OnStar's second ground for dismissal is directed to the Supreme Court's *Iqbal*/*Twombly* plausibility standard. "The relevant inquiry under *Iqbal*/*Twombly* is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). The Federal Circuit has instructed that a patentee need not "prove its case at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). "As the Supreme Court has explained, the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Id.* at 1341 (alteration in original) (quoting *Twombly*, 550 U.S. at 556).

At the same time, the Federal Circuit has held that a patentee "cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1353. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent

claim." *Id.* at 1353. "This determination is, of course, case specific." *In re Bill of Lading*, 681 F.3d at 1342. "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353. *See also K-Tech*, 714 F.3d at 1286 ("The adequacy of the facts pled depends on the breadth and complexity of both the asserted patent and the accused product or system and on the nature of the defendant's business activities.").

In its motion to dismiss, OnStar argues that dismissal is appropriate because WirelessWerx has not plausibly alleged direct infringement. OnStar begins by arguing that "this is the type of case that requires a higher level of detail to state a plausible claim." ECF No. 27, PageID.213. With respect to the claim chart, OnStar argues that the software limitations recited by exemplary Claim 1 "are not limitations for which website screenshots or product photos alone are sufficient to plead a plausible claim for relief." *Id.*, PageID.215. "For several claim limitations," OnStar argues, "the chart merely parrots back the language of the patent claim, word-for-word, with no additional analysis or explanation of what exactly satisfies that limitation, how it does so, or even who is performing the steps of the method claim." *Id.*, PageID.214. As an example, OnStar cites the "programming" step, for which "OnStar is left to guess as to who WirelessWerx alleges is 'programming a

microprocessor,' what the 'transponder' is, where the defined 'geographical zone … on a pixelated image' is, and how the 'area is representative of a geographical zone.'" *Id.*, PageID.215. OnStar also argues that WirelessWerx has not plausibly alleged that all of the method steps are performed by or attributable to OnStar. Specifically, OnStar argues that exemplary Claim 1 "is a method claim which on its face implicates hardware and software systems from third parties (not OnStar)" and the FAC "does not allege any type of divided infringement or OnStar direction or control over the actions of third-parties." *Id.*, PageID.216.

In opposition, WirelessWerx argues that the FAC "does more than 'parrot the claim language'" because it "illustrates in the claim chart how each element of the exemplary claim maps to OnStar's products (which can be found at onstar.com)." ECF No. 28, PageID.233-234. WirelessWerx argues that dismissal is not appropriate because the "First Amended Complaint and exhibits thereto have provided OnStar with the requisite factual allegations which, taken as true, plausibly allege that OnStar infringes the patent in suit in its accused products or services, i.e., OnStar's products." *Id.*, PageID.232.

Having considered WirelessWerx's infringement allegations in the context of the '037 Patent, the Court finds that the FAC does not state a plausible claim of infringement. As explained below, the Court finds that WirelessWerx has not plausibly alleged direct infringement on two grounds. First, exemplary Claim 1 is a

method claim, and WirelessWerx has not plausibly alleged that OnStar performs each method step. Second, the supporting analysis WirelessWerx offers in the claim chart is not just limited, but limited in a way which reveals that WirelessWerx has not plausibly alleged that the method steps have been performed.

As to the first ground, the conclusion that WirelessWerx has not plausibly alleged direct infringement follows from the above discussion of the notice requirement. "Direct infringement under [35 U.S.C.] § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*). As implied by this standard, the Federal Circuit has construed Section 271(a) to cover theories of liability for divided and joint infringement. *Id.* at 1022-23. Here, WirelessWerx does not dispute that it has not asserted the direct infringement claim under a divided or joint infringement theory. Accordingly, the Court deems WirelessWerx to have asserted "a typical claim of direct infringement," which "requires proof that a defendant performs each step of the claimed method." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338 (Fed. Cir. 2016).

As noted above, in the claim chart, WirelessWerx alleges that OnStar directly infringes in connection with a smartphone app for Chevrolet vehicles. Despite its infringement theory implicating multiple entities, WirelessWerx does not identify who among OnStar, Chevrolet, and customers allegedly performs the method steps.

Because WirelessWerx does not identify who among the entities allegedly performs the method steps, it follows that WirelessWerx has not plausibly alleged that OnStar performs each method step. The Court notes that WirelessWerx appears to concede this point in its request for leave to amend. Specifically, WirelessWerx explains that it intends "to assert facts to demonstrate how all steps of a claimed method are performed by or attributable to a single entity." ECF No. 28, PageID.237.

As to the second ground, the conclusion that WirelessWerx has not plausibly alleged that the method steps have been performed is revealed by the way in which the supporting analysis WirelessWerx offers in the claim chart is directed to only some portions of the claim language. As noted above, exemplary Claim 1 recites a method of wirelessly managing an entity (e.g., a vehicle) having a transponder in relation to a preconfigured geographical zone. In connection with the recited transponder, computing device, and control center, the claim language recites software limitations involving the relationship between the recited plurality of coordinates, geographical zone, and configurable operation. In the claim chart, WirelessWerx alleges performance of the method steps by pointing to the "Vehicle Locate" and "Monitor and Control Your Vehicle with Your Phone" features of the myChevrolet app. However, the supporting analysis WirelessWerx offers for how the method steps are allegedly performed is directed to only some portions of the claim language.

Federal Circuit decisions applying the *Twombly*/*Iqbal* plausibility standard establish that while a patentee need not "prove its case at the pleading stage," *In re Bill of Lading*, 681 F.3d at 1339, and "is not required to plead infringement on an element-by-element basis," *Bot M8*, 4 F.4th at 1352, "what is necessary is that facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced," *In re Bill of Lading*, 681 F.3d at 1343. Here, the supporting analysis is not just limited, but limited in a way which reveals that WirelessWerx has not plausibly alleged that the method steps have been performed. As explained below, WirelessWerx individually identifies an alleged plurality of coordinates, geographical zone, and configurable operation, but appears to avoid any analysis of the limitations involving the relationship between these items.

Specifically, exemplary Claim 1 recites three method steps: the "loading" step, the "programming" step, and the "sending a command" step. In the "loading" step, the claim language recites "loading from a computing device to a transponder's memory a plurality of coordinates." '037 Patent 26:59-60. In pointing to the vehicle locate feature for customers to "[l]ocate your vehicle's position on a map," WirelessWerx only identifies alleged "coordinates." ECF No. 25-2, PageID.191. However, the alleged plurality of coordinates are going the wrong way, from a

vehicle to the smartphone, not, as the claim language requires, "from a computing device to a transponder[ for the entity]'s memory."

Next, in the "programming" step, the claim language recites "programming a microprocessor in the transponder to define a geographical zone by creating an area on a pixilated image using said plurality of coordinates, wherein said area is representative of a geographical zone." '037 Patent 26:61-65. In pointing to the smartphone displaying a vehicle's position on a map, WirelessWerx only identifies an alleged "geographical zone by creating an area on a pixilated image." ECF No. 25-2, PageID.192. However, as distinguished from the alleged geographical zone in the smartphone, the claim language requires "programming a microprocessor in the transponder [for the entity] to define a geographical zone … using said plurality of coordinates" that were "load[ed] from [the] computing device to [the] transponder's memory."

Lastly, in the "sending a command" step, the claim language recites "sending a command to the transponder to execute a configurable operation upon receiving a command from a control center, the command being associated with a status of the entity in relation to the geographical zone." '037 Patent 26:66-27:2. WirelessWerx points to the remote command feature, in which "[t]he myChevrolet App lets you remotely command your vehicle right from your smartphone, allowing you to turn it on or off." ECF No. 25-2, PageID.193. However, WirelessWerx only identifies an

alleged "configurable operation upon receiving a command from a control center." *Id.* As distinguished from the generic command for executing the alleged configurable operation, the claim language requires that "the command be[] associated with a status of the entity in relation to the geographical zone."

In summary, neither WirelessWerx's infringement allegations nor the evidence about the myChevrolet app show or support a reasonable inference that the method steps recited by exemplary Claim 1 have been performed. Specifically, WirelessWerx's infringement theory does not account for material limitations involving the relationship between the recited plurality of coordinates, geographical zone, and configurable operation. In accordance with Federal Circuit guidance on applying the *Twombly*/*Iqbal* plausibility standard, the Court concludes that WirelessWerx has not plausibly alleged that the method steps have been performed. *In re Bill of Lading*, 681 F.3d at 1342 (holding that "failure to allege facts that plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss"); *Bot M8*, 4 F.4th at 1353 (holding that "[t]he level of detail required in any given case will vary depending upon a number of factors" including "the materiality of any given element to practicing the asserted claim(s)").

Because WirelessWerx has not plausibly alleged that OnStar performs each method step or that the method steps have been performed, the Court finds that the

FAC does not state a plausible claim of infringement. Accordingly, the Court finds that OnStar is entitled to dismissal of the direct infringement claim.

### D.    Indirect Infringement Claims

The Court has already resolved the issues necessary to decide OnStar's motion to dismiss as to the indirect (i.e., induced and contributory) infringement claims. As noted above, in its motion to dismiss, OnStar argues that dismissal is appropriate for two reasons. First, OnStar argues that WirelessWerx does not allege any facts to support the recitations of the legal standards for induced and contributory infringement. The Court agrees. WirelessWerx's indirect infringement allegations appear in the FAC itself, where the Court has found that WirelessWerx does not set forth any infringement allegations entitled to the assumption of truth. The Court notes that WirelessWerx confirms this point in its opposition to OnStar's motion to dismiss. While arguing that dismissal is not appropriate, WirelessWerx merely points out that the "requirements" (i.e., elements) of induced and contributory infringement claims "are present" in its indirect infringement allegations. ECF No. 28, PageID.235-237. Second, OnStar argues that WirelessWerx has not sufficiently pleaded direct infringement, which is a requirement for indirect infringement. Having found that the FAC does not state a plausible claim of direct infringement, the Court once again agrees. For the above two reasons, the Court finds that OnStar is entitled to dismissal of the indirect infringement claims.

### E.      Form of Dismissal and Leave to Amend

Having found that OnStar is entitled to dismissal of both the direct infringement claim and the indirect infringement claims, the Court finds that OnStar is entitled to dismissal of the FAC. In its motion to dismiss, OnStar asks the Court to dismiss the FAC with prejudice. In opposition, to the extent the Court finds that OnStar is entitled to dismissal, WirelessWerx asks the Court for leave to amend the FAC under Federal Rule of Civil Procedure 15(a)(2).

Federal Rule of Civil Procedure 15(a)(2) provides that a district court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Citing "the liberal standard for amending pleadings," WirelessWerx argues that "leave to amend is warranted, to permit plaintiff to assert factual allegations and theories, so that Plaintiff's case can be adjudicated on its merits." ECF No. 28, PageID.238. "More specifically," WirelessWerx explains that it intends "to assert facts to demonstrate how all steps of a claimed method are performed by or attributable to a single entity, to add factual allegations relating to OnStar's direction or control over the app shown in the chart attached to its Amended Complaint, and to add facts to its pleading and the chart to explain in greater detail the infringement allegations." *Id.*, PageID.237.

However, WirelessWerx has not complied with the clear requirements for seeking leave to amend. Federal Rule of Civil Procedure Rule 7(b)(1) requires that

"[a] request for a court order must be made by motion" and "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1) & (b)(1)(B). Furthermore, Local Rule 15.1 requires that "[a] party who moves to amend a pleading shall attach the proposed amended pleading to the motion." E.D. Mich. LR 15.1. As the Sixth Circuit has explained, "implicit in Rule 15(a) is that the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quotation and alteration omitted). "Indeed, a bare request in an opposition to a motion to dismiss — without any indication of the particular grounds on which amendment is sought — does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (quotation omitted). Here, WirelessWerx offers general descriptions of facts that it intends to add to the FAC, not actual facts on which the Court could determine whether leave to amend is warranted.

As to the form of dismissal, on the one hand, the Sixth Circuit has held that failure to file a motion to amend or a proposed amended complaint is sufficient grounds for dismissal with prejudice. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012). On the other hand, because OnStar answered the original complaint instead of filing a motion to dismiss, this is the first time that the Court has considered the sufficiency of WirelessWerx's

pleading. Despite the deficiencies with WirelessWerx's infringement allegations, the Court is inclined to dismiss the FAC without prejudice, so as to afford WirelessWerx an opportunity to file a motion to amend the FAC.

As noted above, the problem with the FAC is that WirelessWerx brings this case against OnStar and purports to accuse OnStar products of infringement, but relies entirely on allegations about the myChevrolet app. The Court does not question that OnStar and Chevrolet are related entities, or that WirelessWerx relied on evidence about OnStar products in its pre-suit investigation. However, the absence of factual allegations about specific accused OnStar products makes it impossible to draw reasonable inferences in WirelessWerx's favor, so as to support a conclusion that the FAC states a plausible claim of infringement against OnStar. As to the notice requirement, curing the deficiencies might be a simple matter of WirelessWerx identifying a specific accused OnStar product related to the app, including an alleged transponder, computing device, and control center, and who among the entities allegedly performs the method steps. Having concluded that WirelessWerx has not plausibly alleged that the method steps have been performed, the Court cannot comment on curing the deficiencies except to note that WirelessWerx might add details to its infringement theory and/or point to different features of the app.

Basically, while WirelessWerx has yet to connect the dots in its pleading, the Court is not prepared to conclude that the dots cannot be connected. The Court will deny WirelessWerx's request for leave to amend with leave to file a properly supported motion to amend within ten days of this opinion and order.

## V.     CONCLUSION

For the reasons stated in this opinion and order, the Court will **GRANT** OnStar's motion to dismiss the First Amended Complaint **WITHOUT PREJUDICE** and **DENY** WirelessWerx's request for leave to amend. But to the extent WirelessWerx wishes to seek leave to amend, it must file a properly supported motion to amend within ten days of this opinion and order.

**SO ORDERED**

Dated: April 12, 2024                          s/Mark A. Goldsmith_____
                                                            The Honorable Mark A. Goldsmith
                                                            United States District Judge